Local Official Form 104

**FILED**

**DEC 28 2023**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

In re:

    Debtor 1    DONALD B NIXON

    Debtor 2

Case No. 23-00232-ELG

Chapter 13

Hearing Date: _____

Date of Plan: 12-27-2023

**CHAPTER 13 PLAN & NOTICE OF DEADLINE TO OBJECT TO CONFIRMATION**

☐ Original Plan    ☐ Amended Plan. Listed below are the parts of this Plan that have been changed and the creditors affected by the amendment.    ☒ Modified Plan. Listed below are the parts of this Plan that have been changed and the creditors affected by the modification.

The Plan provisions changed by this filing are:

    **Monthly Mortgage Payment to Wells Fargo Home Mortgage.  I would like to receive Mortgage Modification via Bankruptcy Court.  Theresa from Wells Fargo  Executive Office**
Affected Creditors: **office recommended that I complete a Modification Package Via Bank. Court  as result of a pending investigation involving Exhibit d**ocuments
**iattached and The Consumer Financial Protection Bureau.**

    **Wells Fargo Home Mortgage**

**Part 1. Notices**

To Debtors:    This form sets out options that may be appropriate in some cases, but the presence of an option on the form does not indicate that the option is appropriate in your circumstances or that it is permissible in this judicial district. Plans that do not comply with local rules and judicial rulings may not be confirmable.

        *In the following notice to creditors, you must check each box that applies.*

To Creditors:    **Your rights may be affected by this Plan. Your claim may be reduced, modified, or eliminated. A proof of claim must be filed to receive any payment from the Trustee.**

        You should read this Plan carefully and discuss it with your attorney if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

        **If you oppose the Plan's treatment of your claim or any provision of this Plan, you or your attorney must file an objection to confirmation at least 7 days before the date set for the hearing on confirmation, unless otherwise ordered by the Bankruptcy Court.** The Bankruptcy Court may confirm this Plan without further notice if no objection to confirmation is filed. *See* Bankruptcy Rule 3015.

        The following matters may be of particular importance. **The** *Debtor(s) must check one box on each line to state whether or not the Plan includes each of the following items. If an item is checked as "Not Included" or if both boxes are checked, the provision will be ineffective if set out later in the Plan.*

| | | | |
|---|---|---|---|
| 1.1 | Nonstandard provisions, set out in Part 9.1. | ☐ Included | ☐ Not Included |
| 1.2 | A limit on the amount of a secured claim, which may result in a partial payment or no payment at all to the secured creditor, as set out in Part 5.4. | ☐ Included | ☐ Not Included |
| 1.3 | Avoidance of a security interest or lien, as set out in Part 5.3. | ☐ Included | ☐ Not Included |

Local Official Form 104

## Part 2: Plan Payments and Length of Plan

**2.1** **The Debtor(s)' future earnings are submitted to the supervision and control of the Chapter 13 Trustee, and the Debtor(s) will pay as follows:**

$ __1,500.00__ per month for __60__ month(s),

$_____ per month for _____ month(s), and

$_____ per month for _____ month(s), for a total term of _____ months.

The Debtor(s) must make monthly payments commencing no later than 30 days after the petition date.

**2.2** **Regular payments to the trustee will be made in the following manner (check all that apply):**

☐ The Debtor(s) will make payments pursuant to a payroll deduction order. **The Debtor(s) is/are responsible to make payments to the Trustee until any payroll deduction order is in effect.**

☒ The Debtor(s) will make payments directly to the Trustee.

☐ Other (specify method of payment) _____.

**2.3** **Income Tax Returns and Refunds:**

Unless otherwise directed by the Chapter 13 Trustee, the Debtor(s) will supply to the Chapter 13 Trustee a copy of each income tax return that the Debtor(s) file(s) during the Plan term within 14 days of filing the return.

Check one box:

☐ The Debtor(s) will retain any income tax refunds received during the Plan term.

☒ For each year during the Plan term, the Debtor(s) will turn over to the Trustee the amount of refund exceeding $ __3,000.00__ , not later than 30 days after receipt. The tax refunds are in addition to, and not a credit against, the other payments required to be paid under the Plan.

**2.4** **Additional Payments:**

Check one box:

☐ None. *If "None" is checked, the rest of Part 2.4 need not be completed.*

☒ The Debtor(s) will make additional payments to the Trustee from other sources specified below. Describe the source, estimated amount, and date of each anticipated payment.

__ADDITIONAL TUTURING INCOME FOR SCHOOL YEAR 2024, STARTING 04/15/2024__

__AMOUNT OF 300.00 PER MONTH__

**2.5** The Total amount of estimated payments to the trustee provided for in Parts 2.1 and 2.4 is $ __1,800.00__ .

## Part 3: Treatment of Administrative and Priority Claims

**3.1** **Trustee Commission.** The Trustee's fees are governed by statute and may change during the course of the case, not to exceed 10% of all amounts received under the Plan. The Trustee's fee shall be paid under 11 U.S.C. § 1326(b)(2) and will make distributions in the order listed pursuant to Local Rule 3015-5 unless otherwise ordered by the Court. Any deviation from the order of distribution must be set forth in Part 9, Non-Standard Provisions. Allowed claims entitled to priority under 11 U.S.C. §§ 507(a)(1) and (2) will be paid in full. Any interest required to be paid on administrative claims for taxes shall be governed by 11 U.S.C. § 511.

**3.2** **Attorney Fees.**

Check one box:

PRO SE

Local Official Form 104

☐ Debtor(s)' attorney has chosen to be compensated pursuant to the Presumptively Reasonable fee under Local Bankruptcy Rule 2016-5. The balance of fees owed to the Debtor(s)' attorney is $_____.

☐ Debtor(s)' attorney has chosen to be compensated pursuant to a Fee Application and must submit the application as set forth in Local Rule 2016-5. No fees will be paid absent order of the Court. The balance of fees owed to the Debtor(s)' attorney is estimated to be $_____.

**3.3    Domestic Support Obligations.**

☒ None. *If "None" is checked, the rest of Part 3.3 need not be completed.*

☐ Allowed domestic support claims pursuant to § 507(a)(1) shall be paid prior to other priority creditors but concurrently with administrative claims in Part 3.2 above. The total § 507(a)(1) domestic support claims are estimated to be $_____.

<table>
<tr><th>Name of Creditor</th><th>Estimated Claim</th></tr>
</table>

☐ Domestic support payments under § 507(a)(1)(B) and paid less than full amount. Allowed domestic support claims assigned to or owed to a governmental unit pursuant to 11 U.S.C. § 507(a)(1)(B) will be paid less than the full amount of the claim under 11 U.S.C. § 1322(a)(4). *This Plan provision requires payments in Part 2.1 to be for a term of 60 months.*

<table>
<tr><th>Name of Creditor</th><th>Estimated Claim</th><th>Amount of Claim to be paid</th></tr>
</table>

**3.4    Priority Claims other than Attorney Fees and Domestic Support Claims.**

The following priority creditors, defined by 11 U.S.C. §§ 507(a)(3)-(10), will be paid in full by deferred cash payments, pro rata with other priority creditors:

Check one box:

☒ None. *If "None" is checked, the rest of Part 3.4 need not be completed.*

<table>
<tr><th>Priority Creditor</th><th>Estimated Claim Amount</th></tr>
<tr><td>☐</td><td></td></tr>
</table>

**Part 4: Treatment of Secured Claims**

☐ None. *If "None" is checked, the rest of Part 4 need not be completed.*

**4.1    General Provisions:** The terms and conditions included in this Part 4.1 apply to all remaining subjections of Part 4.

If a claim is listed in the Plan as secured and the creditor files a proof of claim alleging the claim is unsecured, the creditor will be treated as unsecured for the purposes of distribution under the Plan.

The Trustee may adjust the monthly disbursement amount as needed to pay an allowed secured claim in full.

If relief from the automatic stay is ordered to a lienholder as to any item of collateral listed in this Part, then, unless otherwise ordered by the Court, all payments to said lienholder under Part 4 as to that collateral will cease.

Unless the Court orders otherwise, the lienholder may amend a timely filed proof of claim to assert a claim for an unsecured deficiency claim remaining after enforcement of its lien as follows: (a) an amended proof of claim asserting an unsecured deficiency claim for a claim for which the collateral was **real property** shall be filed no later than **180** days after entry of the order granting relief; (b) an amended proof of claim asserting an unsecured deficiency claim for a claim for which the collateral was **personal property** (that is, anything other than real estate) shall be filed no later than **60** days after entry of the order granting relief.

Local Official Form 104

**4.2**  **Maintenance of Payment and Cure of Default, if Any, on Allowed Claims Secured by Real Property.**

Check one box:

☐  None. *If "None" is checked, the rest of Part 4.2 need not be completed.*

☒  The Debtor(s) will maintain by **direct payments** the current contractual installment payments on the secured claims listed below, with any changes required by the applicable contract and notice in conformity with any applicable rules. Any existing arrearage on a secured claim will be paid in full through disbursements by the Trustee. Unless otherwise ordered by the Court, the amount listed on a filed proof of claim controls over any contrary amount listed below as to the arrearage.

| Name of Creditor | Description of Collateral | Estimated Amount of Arrearage |
| --- | --- | --- |
| Freemont investments\ wells fargo | sfh, homestead | 384,000.00 |

☐  The Debtor(s) will maintain by **payments disbursed by the Trustee** the current contractual installment payments on the secured claims listed below, with any changes required by the applicable contract and notice in conformity with any applicable rules. In addition, any existing arrearage on a secured claim will be paid in full through disbursements by the Trustee. Unless otherwise ordered by the Court, the amount listed on a filed proof of claim controls over any contrary amount listed below as to the arrearage.

| Name of Creditor | Description of Collateral | Estimated Amount of Arrearage | Estimated Monthly Payment |
| --- | --- | --- | --- |

**4.3**  **Maintenance of Payment and Cure of Default, if Any, on Allowed Claims Secured by Property Other than Real Property.**

Check one box:

☒  None. *If "None" is checked, the rest of Part 4.3 need not be completed.*

☐  The Debtor(s) will maintain by **direct payments** to the creditors listed below the regular contract monthly payments that come due during the period of this Plan. The pre-petition arrearages on such debts shall be cured by the Trustee pro rata with other secured claims.

| Name of Creditor | Description of Collateral | Regular Contract Payment | Estimated Arrearage |
| --- | --- | --- | --- |

☐  The Debtor(s) will maintain by **payments disbursed by the Trustee** the regular contractual monthly payments to the creditors listed below that come due during the period of this Plan, and pre-petition arrearages on such debts shall be cured by the Trustee pro rata with other secured claims.

| Name of Creditor | Description of Collateral | Regular Contract Payment | Estimated Arrearage |
| --- | --- | --- | --- |

**4.4**  **Secured Claims Paid Through Plan.**

Check one box:

☐  None. *If "None" is checked, the rest of Part 4.4 need not be completed.*

Local Official Form 104

☐ The following secured claims will be paid in full through the Plan with interest at the rate stated below. These payments will be disbursed by the Trustee.

| Name of Creditor | Description of Collateral | Estimated Amount of Claim | Interest Rate | Estimated Monthly Payment |
|---|---|---|---|---|
| | | | | |

**4.5   The Debtor(s) will surrender collateral to the lienholder.**

Check one box:

x☒ None. *If "None" is checked, the rest of Part 4.5 need not be completed.*

☐ The Debtor(s) will surrender the collateral listed below to the respective lienholder. Describe the collateral securing the claim. Upon Plan confirmation, the automatic stay of 11 U.S.C. § 362(a) be terminated as to the collateral only and the co-debtor stay of 11 U.S.C. § 1301(a) terminates in all respects, if not terminated earlier, as to the collateral listed:

| Name of Creditor | Description of Collateral |
|---|---|
| | |

**4.6   Secured Claims that are to be paid outside of the Plan.**

Check any applicable boxes:

☐ None. *If "None" is checked, the rest of Part 4.6 need not be completed.*

x☒ The Debtor(s) will pay directly outside of the Plan all secured claims that are listed below, including any arrearages. The holder of the claim shall retain its lien (or right of setoff) after completion of the Plan and entry of any discharge. The Debtor(s) shall begin current contractual payments in the first month after the filing of the case.

| Name of Creditor | Description of Collateral | Estimated Arrearage |
|---|---|---|
| GM FINANCIAL | 2015 INFINITI QX60 | 0.00 |

**Part 5: Valuation of Security Interests and Treatment of Liens**

x☒ None. *If "None" is checked, the rest of Part 5 need not be completed.*

**5.1   General Provisions:** The terms and conditions included in this Part 5.1 apply to all remaining subsections of Part 5.

The Debtor(s) request(s) that the Court determine the value of the secured claims listed below. For each non-governmental secured claim listed below, the Debtor(s) state(s) that the value of the secured claim should be as set out in the column headed "Name of Creditor." For each listed claim, the secured claim will be paid pursuant to Part 4.

With respect to each allowed secured claim provided for in the Plan, the holder of such secured claim will retain the listed lien on the indicated property interest until the earliest of the following:

a) Payment of the underlying debt determined under nonbankruptcy law, or
b) Discharge of the underlying debt under 11 U.S.C. § 1328, at which time the lien will terminate and be released by the creditor, or
c) If the Debtor(s) cannot receive a discharge as provided in 11 U.S.C. § 1328(f), the notice of Plan Completion.

Local Official Form 104

If the case is dismissed or converted without completion of the Plan, liens shall also be retained by the holders to the extent recognized under applicable nonbankruptcy law.

**5.2    Valuing a Claim or Avoidance of a Lien by Separate Motion or Adversary Proceeding.**

☒☒X  None. *If "None" is checked, the rest of Part 5.2 need not be completed.*

☐  The Debtor(s) will seek valuation of a claim or avoidance of a lien through a separate motion or Adversary Proceeding. The amount of the secured claim will be set by Court order, with the interest rate set forth below, unless the Court orders otherwise. The portion of any allowed claim that exceeds the amount of the secured claim will be treated as an unsecured claim under Part 6 of this Plan to the extent allowed.

For each claim listed, the value of the secured claim will be paid with interest in full through the Plan, at the valuation determined by the Court.

| Name of Creditor | Estimated Amount of Creditor's Claim | Description of Collateral | Value of collateral | Amount of Claims Senior to Creditor's Claim | Secured Claim to Be Paid Through Plan | Interest Rate |
|---|---|---|---|---|---|---|
| | | | | | | |

**5.3    Request for avoidance of a lien pursuant to 11 U.S.C. § 522(f) through the Plan.**

☒☒X  None. *If "None" is checked, the rest of Part 5.3 need not be completed.*

☐  The Debtor(s) seek(s) to value a claim or avoid a judicial lien and/or nonpossessory, non-purchase money security interest pursuant to 11 U.S.C. § 522(f) through this Plan. The amount of the judicial lien or security interest that is avoided will be treated as an unsecured claim in Part 6 of this Plan to the extent allowed. The amount, if any, of the judicial lien or security interest that is not avoided will be paid in full under the Plan at the interest rate listed below.

If the lienholder has not filed a proof of claim, evidence of the following should be filed separately or as an exhibit to the Plan: (i) the collateral's value; (ii) the existence of all other liens; (iii) the amount of each debt secured by the collateral; and (iv) the name, address, and nature of ownership of any non-debtor owner of the property. **This supplemental material need only be served on affected creditors and not on all creditors.**

*Insert additional claim boxes as needed.*

| Information regarding judicial lien or security interest | Calculation of lien avoidance | |
|---|---|---|
| Name of Creditor | a.  Amount of lien | $_____ |
| _____ | b.  Amount of all other liens | $_____ |
| Description of Collateral | c.  Value of claimed exemptions | $_____ |
| _____ | d.  Total of adding lines a, b, and c | $_____ |
| Lien identification | | |
| _____ | e.  Value of Debtor(s)' interest in property | $_____ |
| | f.  Subtract line e from line d | $_____ |
| | Extent of exemption impairment (check applicable box) | |
| | ☐ Line f is equal to or greater than line a. The entire lien is avoided. | |

Local Official Form 104

☐ Line f is less than line a. A portion of the lien is avoided.
**(Complete the next part)**

Treatment of remaining secured claim:

**Amount of Secured Claim After Avoidance**
**(Line a Minus Line f):**                               **Interest Rate (If Applicable):**

5.4     **Request for valuation of security or avoidance of liens under § 506 through the Plan.**

   XX   None. *If "None" is checked, the rest of Part 5.4 need not be completed.*

   ☐   The Debtor(s) seek(s) to value a claim or avoid a lien under 11 U.S.C. § 506 through the Plan. If the lienholder has not filed a proof of claim, evidence of the following should be filed separately or as an exhibit to the Plan: (i) the collateral's value; (ii) the existence of all other liens; (iii) the amount of each debt secured by the collateral; and (iv) the name, address, and nature of ownership of any non-debtor owner of the property. **This supplemental material need only be served on affected creditors and not on all creditors.**

   The amount and interest rate of the claim is set as listed below or by superseding Court order. For each claim listed, the value of the secured claim will be paid in full with interest at the rate listed below. The portion of any allowed claim that exceeds the amount of the secured claim will be treated as an unsecured claim under Part 6 of this Plan to the extent allowed.

| Name of Creditor | Estimated Amount of Creditor's Claim | Description of Collateral | Value of Collateral | Amount of Claims Senior to Creditor's Claim | Secured Claim to Be Paid Through Plan | Interest Rate |
|---|---|---|---|---|---|---|
| | | | | | | |

**Part 6: Treatment of Nonpriority Unsecured Claims**

6.1     **Nonpriority unsecured claims not separately classified.**

   ☐   Allowed nonpriority unsecured claims that are not separately classified in Part 6.2 will be paid pro rata. Approximately _____% of the total amount of these claims, an estimated payment of $_____.

   ☐   100% of allowed nonpriority unsecured claims that are not separately classified in Part 6.2, an estimated payment of $_____.

   If the estate of the Debtor(s) was/were liquidated under chapter 7, nonpriority unsecured claims would be paid approximately $_____. Regardless of the options checked above, payments on allowed nonpriority unsecured claims will be made in at least this amount.

6.2     **Other separately classified nonpriority unsecured claims.** Check one.

   XX   None. *If "None" is checked, the rest of Part 6.2 need not be completed.*

   ☐   The nonpriority unsecured allowed claims listed below are separately classified and will be treated as follows:

| Name of Creditor | Basis for Separate Classification and Treatment | Treatment |
|---|---|---|
| | | |

Local Official Form 104

## Part 7: Executory Contracts and Unexpired Leases

**7.1.** The executory contracts and unexpired leases listed below are assumed and/or rejected as specified. All other executory contracts and unexpired leases are rejected. Check all that apply.

☒ None. *If "None" is checked, the rest of Part 7.1 need not be completed.*

☐ **Executory contracts and unexpired leases to be rejected.** The Debtor(s) reject the following executory contracts:

| Name of Creditor | Type of Contract |
|---|---|

Any claim for rejection damages must be filed within 60 days from entry of the order confirming this Plan.

☐ **Executory contracts and unexpired leases to be assumed.** The Debtor(s) assume the following executory contracts:

| Name of Creditor | Type of Contract | Cure Amount and Term(s) |
|---|---|---|

## Part 8. Miscellaneous

**8.1** **Adequate Protection Payments for Claims Secured by or Subject to a Lease of Personal Property.**

☒ None. *If "None" is checked, the rest of Part 8.1 need not be completed or reproduced.*

☐ Beginning not later than 30 days after the petition date and until the Plan is confirmed, the Debtor(s) will directly pay adequate protection payments for claims secured by or subject to a lease of personal property for the Claims Listed Below. After confirmation of the Plan, the claims will be paid under Part 4. Make sure to list the amount of the monthly payment the Debtor(s) will pay before confirmation and list the last 4 digits only of the account number, if any, the lienholder uses to identify the claim.

| Lessor/Lienholder | Property/Collateral | Acct. No (last 4 numbers) | Monthly Payment |
|---|---|---|---|

**8.2** **Revesting Property of the Estate.**

Property of the estate shall revest in the Debtor(s) upon:

(a) the Debtor(s) is/are granted a discharge pursuant to 11 U.S.C. § 1328;
(b) the Trustee files a notice of Plan completion if by reason of 11 U.S.C. § 1328(f) the Debtor(s) cannot receive a discharge; or
(c) the case is dismissed.

**8.3** **Incurrence of Indebtedness.**

The Debtor(s) shall not voluntarily incur additional indebtedness exceeding the cumulative total of $5,000 principal amount during the term of this Plan, whether unsecured or secured, except upon written notice and approval from the Trustee. Nothing herein shall prohibit the Debtor(s) from filing a motion for Court approval indebtedness in any amount.

## Part 9: Non-standard Provisions

**9.1** **Check "None" or List Nonstandard Plan Provisions.**

☒ None. *If "None" is checked, the rest of Part 9.1 need not be completed.*

☐ Under Bankruptcy Rule 3015(c), nonstandard provisions must be set forth below. A nonstandard provision is a provision not otherwise included in the Official Form or deviating from it. Nonstandard provisions set out elsewhere in this Plan are ineffective.

Local Official Form 104

**The following Plan provisions will be effective only if there is a check in the box "Included" in Part 1.1:**

Part 10: Signatures

**10.1    Signatures of Debtor(s) and Debtor(s)' Attorney.**

The Debtor(s)' signature(s) below certify(ies) that the Plan provisions above are all the terms proposed by the Debtor(s), and the Debtor(s) has/have read all the terms.

x _____        x _____
Signature of Debtor 1                                        Signature of Debtor 2
Executed on _____        Executed on _____

x _____        Date _____
Signature of Attorney for Debtor(s)

By filing this document, the Debtor(s), and if represented by an attorney the Attorney for Debtor(s) also certify(ies) that the wording and order of the provisions in this Chapter 13 Plan are identical to those contained in Local Form 14, other than any nonstandard provisions included in Part 9.1.

Local Official Form 104

## CERTIFICATE OF SERVICE OF CHAPTER 13 PLAN

Check all that apply:

☐ **AMENDED PLANS ONLY INCREASING PAYMENTS**: The Amended Chapter 13 Plan ☐ filed herewith / ☐ filed on _____, 20___, makes no changes from the last previously-filed Plan other than to increase the amount payable under the Plan. In such event, no service is required.

☐ A separate certificate of service shall be filed pursuant to Federal Rule of Bankruptcy Procedure 7004.

(X) I certify that on _Dec 28, 2023_, I mailed a copy of the foregoing to the creditors and parties in interest on the attached Service List.

_____
Signature of attorney/pro se party

_____
Name, Bar Number (if applicable)

_____
Firm (if applicable)

_____
Address

_____
Address

_____
Telephone

_____
Email Address

 # Office of the Comptroller of the Currency

September 18, 2017


Donald Nixon
5132 New Hampshire Avenue, NW
Washington DC 20011


RE: Case # 03220268 -WELLS FARGO BANK, NATIONAL ASSOCIATION

Dear Mr. Nixon:


In July 2014, the Federal Reserve published the Independent Foreclosure Review on the mortgage servicing enforcement actions, which includes interim data on the cash payments made and Foreclosure prevention assistance provided under the Payment Agreement of the mortgage servicing companies subject to enforcement actions for deficient practices in mortgage loan servicing and foreclosure processing reached agreements with the OCC and the Federal Reserve in other foreclosure prevention assistance, such as Loan modifications and the forgiveness of deficiency judgements. The Office of the Comptroller of the Currency(OCC), the Board of Governors of the Federal Reserve System ("Federal Reserve"), and the Office of Thrift Supervision(OTS) issued formal enforcement actions against 16 mortgage servicing companies after examiners identified a pattern of misconduct and negligence related to deficient practices in residential mortgage loan servicing and foreclosure processing during reviews conducted from November 2010 to January 2011.

Wells Fargo  National Association agreed to the foliowing terms in agreement with Donald Nixon, Loan Number -1146027513, and Property Address 5132 New Hampshire Ave. NW, Washington DC, 20011:

1.  Mr. Nixon  should have received $325 cash payment from Rush Management. , 2. Immediate Home Modification without Trial Payments, 3. The removal of total amount of arrears accrued for years 2008 to 2014 and  4. The removal of The Mortgage record for the years 2008-2014 from Mr. Nixon(s) Credit Report.


Sincerely,

*Customer Assistance Group*


Customer Assistance Group, 1301 McKinney Street, Suite 3450, Houston, Texas 77010-9050
Phone: (800) 613-6743, FAX: (713) 336-4301
Internet address: www.helpwithmybank.gov



# Office of the Comptroller of the Currency

August 21, 2019

Donald Nixon
5132 New Hampshire Avenue, NW
Washington DC 20011

Re:  Case # 03220268 – WELLS FARGO BANK, NATIONAL ASSOCIATION

Dear Mr. Nixon:

This letter acknowledges receipt of your complaint in the Customer Assistance Group (CAG) of the Office of the Comptroller of the Currency (OCC).

Your complaint appears to involve an issue that no longer falls under the direct jurisdiction of our office.  Therefore, we are referring your letter to the appropriate supervisory agency, which is the Consumer Financial Protection Bureau (CFPB).  Their address is:

> Consumer Financial Protection Bureau
> PO Box 2900
> Clinton, IA  52733-2900

Their toll free phone number is 1 (855) 411-2372.  Their Internet address is http://www.consumerfinance.gov/complaint.  Please direct all future correspondence regarding this issue to that agency.

Sincerely,

*Customer Assistance Group*

877.537.3666 *telephone*
www.1800fremont.com



05/12/06

12  100-000003  0605

DONALD NIXON
5132 NEW HAMPSHIRE AVE NW
WASHINGTON DC  20011-3210

Property Address:  **5132 NEW HAMPSHIRE AVE  NW, WASHINGTON, DC 20011**
Fremont Investment & Loan Number:  **1000303297**

## NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

You are hereby notified that the servicing of your <u>first</u> mortgage loan, that is, the right to collect payments from you, has been assigned, sold, or transferred from **Fremont Investment & Loan** to <u>AMERICA'S SERVICING COMPANY</u> effective <u>06/01/2006.</u>

The assignment, sale or transfer of the servicing of your <u>first</u> mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your present servicer send you this notice no later than 15 days before the effective date of transfer or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing.

**Your present servicer is Fremont Investment & Loan.**  If you have any questions relating to the transfer of servicing from your present servicer, call the Customer Service Center between 6:00 a.m. and 6:00 p.m., PST, Monday through Friday.  The number is (800) 776-7511.  This is a toll free number.

**Your new servicer is** <u>AMERICA'S SERVICING COMPANY</u>.  The business address for your new servicer is <u>P.O. BOX 10328, DES MOINES, IA 50306-0328. The payment address for your new servicer is P.O. BOX 37297, BALTIMORE, MD 21297-3297.</u>  If you have any questions relating to the transfer of servicing to your new servicer, call the Customer Service Department at <u>866-487-6703, MONDAY THROUGH FRIDAY 8:00 AM TO 6:00 PM.</u>

The date that your present servicer will stop accepting payments from you is <u>05/31/2006.</u>  The date your new servicer will start accepting payments from you is <u>06/01/2006.</u>  Send all payments due on or after that date to your new servicer.  <u>Please note that any automatic drafting/ACH service will also be cancelled as of 05/31/2006.</u>  If you are interested in re-establishing this automatic draft/ACH method with your new servicer, please contact their Customer Service Department after the transfer date.

The transfer of servicing rights may affect the terms of, or the continued availability of, any optional insurance coverage or other membership products.  If you have been paying fees for optional insurance or membership products in addition to your mortgage payment, these services will not be continued.  You should contact the provider of the optional insurance or membership product directly regarding any continued availability.

At year-end, Fremont Investment & Loan will send you a statement reflecting your account activity for the portion of the year we serviced your loan.  Your new servicer will send a statement for the portion of the year they serviced your loan.  You will need to consolidate both statements to obtain the totals you paid for principal and interest.                                    (Over)

---

**RESIDENTIAL LOAN SERVICE CENTER** | P.O. BOX 19030 | SAN BERNARDINO, CA 92423-9030

*Member FDIC* | *Serving our customers since 1937*



877.537.3666 *telephone*
www.1800fremont.com

05/07/06

12  100-000003  0605

DONALD NIXON
5132 NEW HAMPSHIRE AVE NW
WASHINGTON DC  20011-3210

Property Address: · **5132 NEW HAMPSHIRE AVE  NW, WASHINGTON, DC 20011**
Fremont Investment & Loan Number:  **1000303297**

Dear Customer:

Per your request, Fremont Investment & Loans received the following Official Checks:

Provident Bank – Check Number 5044899690 ($18,000) and Provident Bank- Check Number-
5046964248 ($14,946.50).

The total amount of $32,946.5 will l be applied to the Principal Balance and pay the mortgage
for the months of April 1, 2006 through January 1, 2007.  Your mortgage is current and your
next mortgage payment due date is February 1, 2007.

If you have any questions relating to your request for advanced monthly payment request
please call the Customer Service Center between 6:00 a.m., PST, Monday through Friday.  The

Number is (800) 776-7511.  This is a toll free number.

Sincerely,

Fremont Investment & Loan



OFFICIAL CHECK

5044899690

THIS DOCUMENT HAS AN ARTIFICIAL WATERMARK PRINTED ON THE BACK
THE FRONT OF THE DOCUMENT HAS A MICRO-PRINT SIGNATURE LINE.
ABSENCE OF THESE FEATURES WILL INDICATE A COPY.

**Provident**
BANK

AGENT FOR TRAVELERS EXPRESS    2520

23-1678-980

04/10/06

$18,000.00

DATE

PAY      Eighteen Thousand   AND 00/100
TO THE
ORDER OF    *****CR DONALD B. NICKS*

KNOW YOUR ENDORSER-
REQUIRE INDENTIFICATION    5132 New Hampshire Ave NW

FOR Mortgage Payments

DRAWER: TRAVELERS EXPRESS COMPANY, INC.    Washington DC
P.O. BOX 9476 MINNEAPOLIS, MN 55480
DRAWEE: US BANK, ST PAUL, MN

NON NEGOTIABLE

CUSTOMER COPY
AUTHORIZED AGENT SIGNATURE

Office of the Comptroller of the Currency

August 11, 2017

Donald Nixon
5132 New Hampshire Avenue, NW
Washington DC 20011

Re:  Case # 03220268 – WELLS FARGO BANK, NATIONAL ASSOCIATION

Dear Mr. Nixon:

The Consumer Financial Protection Bureau, Office of the controller of Currency (OCC) and the Federal Reserve Board issued enforcement actions against Wells Fargo Home mortgage from April 2011 to April, 2018. Under those actions, the servicers were required to retain independent Consultants to review foreclosures that were initiated, pending, or completed during 2009 or 2010. The review was intended to determine if borrowers suffered financial harm directly resulting from foreclosure abuses(i.e.) errors, misrepresentations, or other deficiencies that may have occurred within their mortgages.

America's Servicing Company/ Wells Fargo was an active participant in the Independent Foreclosure Review and it was determined that America's Servicing Company was required to compensate many of its customers because of a wide array of mortgage abuses ranging from dual tracking, deliberately delaying borrowers Making Home Affordable Modifications, ( in order to increase profits), using incorrect NPV ( Net Present Value ) information in processing the NPV calculation and placing borrowers in foreclosure despite not being in default.

The conclusion of the research provided the following information in regards to Mr. Nixon's current loan:

Wells Fargo Home Mortgage was penalized by the Consumer Financial Protection Bureau for intentionally denying Mr. Nixon and Homeowners Modifications and allowing the arrears and Principal Balance to increase which would lead to Default then Foreclosure so they can cash in on the full amount of Their Government Insurance Policy thereby gaining a substantial profit. Wells Fargo Home Mortgage offered Mr. Nixon a Modification realizing that he submitted 34 prior applications during a 9 year span in which he qualified for Making Home Affordable Modification. Wells Fargo denied Mr. Nixon a modification from 2009 to 2014 because they intentionally increased the arrears and removed the equity from the property to enrich themselves which is a violation of The Fair Housing Act, Real Estate Settlement and Procedure Act, The Truth & Lending Act and The Equal Credit Opportunity Act.

The Office of The Comptroller of Currency penalized Wells Fargo Home Mortgage and Lowered their CRA rating from outstanding to Needs to Improvement as a result of the extent and egregious evidence of discriminatory and illegal credit practices. Wells Fargo Home Mortgage violated the Fair Housing Act and The Equal Credit Opportunity Act by engaging in a pattern or practice of discrimination on the basis of race or color. An estimation that the Department of Justice agreed with. Evidence suggests that Fremont Loan and Investment, Wells Fargo Home Mortgage/ Americas Servicing Company intentionally discriminated against Mr. Nixon with Predatory Lending Practices and numerous housing violations.

On January 1,2006 Fremont Loan and Investments and Donald Nixon finalized and completed a settlement for the property located at 5132 New Hampshire Ave. NW, Washington DC 20011. Within the completion of the Settlement Mr. Nixon's interest rate, monthly payment and signature/initials were altered from the original Documents/Promissory note from 7 % to 10.25% along with a Balloon Payment Rider without Mr. Nixon's written authorization or consent. The original documents were signed electronically. Mr. Nixon's initials and signature were an electronic signing. However, the settlement Document was signed with a written signature  Also, on page 5 of 15 of the Settlement Agreement it states in the Transfer of Property that "The

beneficiary of this Security Instrument is MERS ( Mortgage Electronic Registration System) ( Solely as nominee for lender and Lender's successors and assigns) and the successors and assigns of MERS". This Security Instrument secures to Lender. However, on the Deed of Trust page it says return to Fremont Investment and Loan PO Box 34079 Fullerton California 82804-34878. The mortgage in question was issued by Fremont Investment and Loan on December 30, 2005. The loan states " For purpose of recording , MERS is the mortgage of record and beneficiary and is organized and existing under the laws of Delaware. This initial transaction is defective because the assignment of the mortgage without the transfer of the mortgage without the debt is a nullity. Secondly, an assignment from MERS to Fremont Investment and Loans is defective as MERS does not have the authority to assign the Mortgage or the note. Also, the note is extremely predatory because Mr. Nixon was issued a 10.25% interest rate which included a Balloon Rider and Adjustable Rate Rider. The Balloon Payment Rider became active in February, 2008. However, Fremont did not include the total amount required in full at the maturity date. As a result, they intentionally concealed and did not properly disclose the enormous payment due which is an act of fraudulent concealment. Mr. Nixon and Fremont entered into an agreement according to written documentation in which Mr. Nixon would pay 7 months Mortgage payments in advance in exchange for the removal of " The Lender is Under No Obligation To Refinance This Loan Language in the Balloon Payment Rider Note" and refinance the Loan  after six months. Fremont agreed to the agreement knowing that they were in the beginning stages of an FDIC investigation in which Mr. Nixon was totally unaware of. As a result of the investigation Fremont sold the loan to Select Portfolio Services withdrawing from the agreement despite providing Mr. Nixon with a letter stating that That Balloon Rider would be removed. Fremont Investment and Loans have been involved in hundreds of wrongful plaintiff cases in which it was proven without a doubt that Fremont filed a Corrective Deed transferring its rights to a trust. The Deeds were usually prepared and signed by employees of Doc X, a discredited mortgage document company in Alpharetta, Georgia. Employees of Doc X signed as Attorney- in- Fact for Fremont Investment and Loan and continued to sign long after Fremont had changed its name and ceased operations. In numerous cases Fremont employees submitted sworn Affidavits as to amounts due and owing. In the affidavits employees of Fremont swore that Fremont misplaced or lost the original notes and Assignments from 2005-2008 and the loans had been sold.  In a list of 200 Foreclosure cases brought in the name of the trust, the trustees claimed to have lost the original Fremont note. An examination of Foreclosure complaints brought by trustees on behalf of mortgage backed trusts with Fremont loans show that in over 1,000 foreclosure cases filed during the peak foreclosure years of 2006- 2010, were filed and proven to have lost notes. As a result of numerous transactions conducted by Fremont Investments and Loan the Federal Deposit Insurance Corporation (FDIC) issued a Cease and Desist order against Fremont Loan and Investments after 12 months of intense investigation in 2007.  The FDIC discovered that Fremont Investment and Loans was operating without effective risk management policies and procedures in place in relation to subprime mortgage and commercial real estate lending operations. The FDIC determined, that Fremont Investment and Loans had been operating without adequate subprime mortgage loans in a way that substantially increased the likelihood of borrower default or other loss to the bank. Unfortunately, the majority of the customers affected were African Americans, Hispanics and minority homeowners who received higher interest rates and over all fees. Mr. Nixon and countless others are victims of Fremont's ineffective risk management policies and procedures.  Fremont Investment and Loans did not deny the allegations and entered Bankruptcy, filing a Chapter 11 in which the company liquidated its assets.

Mr. Nixon was placed intentionally in foreclosure by America's Servicing Company/ Wells Fargo Home Mortgage despite evidence presented to America's Servicing Company demonstrating that Mr. Nixon was not in default. Americas Servicing Company received letters from Fremont Loan and Investments and Select Portfolio Services stating that Mr. Nixon's loan was current along with written documentation that America's Servicing Company received the following payments: Check Number 5044899690 ($18,000) and Check Number 5046964248 ($14,946.50).  Instead of removing Mr. Nixon from Default Americas Servicing Company thrusted Mr. Nixon into Foreclosure and offered a Modification which included thousands of dollars of unwarranted fees included into the Principal Balance of the loan.

Wells Fargo Home Mortgage Violated the 1968 Fair Housing Act by denying Mr. Nixon access to making payments despite evidence that he was not in default. Mr. Nixon forwarded 68 payments to Wells Fargo from 2005-2014. However, all payments were returned. Mr. Nixon was informed that he should not concern himself with Statute of Limitations in regards to the payment history because the error and or miscalculation within the payment history and loan would be resolved according to written documentation presented to Mr. Nixon from Americas Servicing Company.

In August 2018, The Securities & Exchange Commission revealed that Wells Fargo intentionally denied Mr. Nixon and Homeowners modifications because Wells Fargo Home Mortgage deliberately incorporated and utilized automated software which intentionally and falsely formulated calculation errors for the intended purpose of denying Mr. Nixon a Modification, and nitiating foreclosure so Wells Fargo could earn a profit.  From 2009- 2015 Mr. Nixon submitted 36 completed Making Home Affordable Modification Packages which he clearly qualified for a modification, and 34 were intentionally denied because of the

automated software error. As a result, Americas Servicing Company and wells Fargo Home Mortgage deliberately attached hundreds of Thousands dollars of unwarranted fees to the Principal Balance to also assist towards increasing the NPV and denying Mr. Nixon a Modification which violates The 1968 Fair Housing Act. Wells Fargo's miscalculation lead to the unlawful foreclosures of 870 to potentially thousands of customers throughout the United States.

Americas Servicing Company/ Wells Fargo Home Mortgage did not honor its agreement with Federal Reserve Board in conclusion with the Independent Foreclosure Review and offer Mr. Nixon a Modification without restrictions as a result of a wide array of housing violations. Instead Wells Fargo continues a pattern and practice of Discriminatory and Predatory lending against Mr. Nixon. In 2012 to 2015 Wells Fargo was cited by The Justice Department and Office of the Comptroller and Currency for discriminatory loans and Discrimination towards Mr. Nixon and thousands of Minority Homeowners across 36 states including Washington DC and Baltimore, Maryland. The Investigation centered on Wells Fargo and Americas Servicing Company Mortgages made from 2004-2009 by Independent brokers. The Investigation discovered that Fremont Loan and Investments, Americas Servicing Company and Wells Fargo Home mortgage targeted and steered African Americans and Latino Borrowers into higher cost, non-prime mortgage loans. The loans were intended to generate higher profits and mortgage servicing income for the banks through higher loan interest rates, increased mortgage servicing charges over the life of the loan, loan pre-payment penalties, expensive added fees, and increased default interest rates and fees charged to late-paying or default corrowers. Mr. Nixon was a highly qualified African American Applicant who received a sub- prime loan despite having qualifications similar or better than applicants who received much better interest rates and down payments (Reverse Redlining).

The Consumer Financial Protection Bureau have received 27 complaints on behalf of Mr. Nixon in regards to the struggles and the ramifications that have occurred as a result of the Mortgage abuses inflicted upon him by Fremont Investment and Loans, America's Servicing Company and Wells Fargo. Mr. Nixon's credit rating has been destroyed as a result of Wells Fargo, Fremont and America's Servicing Company denying him the opportunity to make payments. Mr. Nixon has been in foreclosure for 10 years which is a violation of The Fair Credit Act and is blatant, arrogant discrimination considering Mr. Nixon presented years of evidence to assist towards a resolution. Mr. Nixon and his family have suffered from depression, anxiety, and destroyed credit with fears of Foreclosure and Instability according to letters/written testimony received from Mr. Nixon's Primary Care Physician, Counselor and Oncologist. We highly recommend that Mr. Nixon obtain the services of an Attorney, and file a complaint on his behalf immediately.

Sincerely,

*Customer Assistance Group*

An official website of the United States Government

Consumer Financial Protection Bureau (https://www.consumerfinance.gov/)

Start a new complaint

All complaints (.)

# 231127-12593837

**OPEN**

## Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 11/27/2023 | Mortgage | Struggling to pay mortgage |

## We received your complaint. Thank you.

We will review your complain:. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

I am currently in Bankruptcy and have been in Foreclosure with Wells Fargo for 17 years. 17 years! Wells Fargo refuses to offer Work out options or honor any agreements. I will attach documents for viewing.

Complaint Detail

**ATTACHMENTS**

| FREMONT ORIGINAL CLOSING DOCUMENTS.pdf (6 MB) | OCC LETTER 2017 BE (1) (1).pdf (396 KB) | FREMONT-PRINCESS.pdf (817.9 KB) | NEW OFFICE CONTROLLER OF CURRENCY LETTER FOR COURT (1).pdf (2.8 MB) | FREMONT LETTER#2 (1).pdf (358.4 KB) |

View full complaint ➕

**Sent to company**

**STATUS**

Sent to company on
11/27/2023

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

**Company still working**

**STATUS**

Company response is
in progress as of
12/8/2023

## The company has responded that it is still working on your issue

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we sent your complaint to the company.

### COMPANY'S INTERIM RESPONSE

We've been unable to establish contact with our customer, Donald Nixon. We'll need additional time to ensure we fully address all of the concerns brought to our attention and provide a thorough response. We appreciate your patience as we finalize our research.

Note on user experience

Privacy Act Statement

OMB #3170-0011

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

8 a.m. to 8 p.m. ET, Monday through Friday (except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

More than 180 languages available.

An official website of the United States Government

Complaint Detail